## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| RONALD R. FOSTER, and | ) | |
| MARKETING & PLANNING | ) | |
| SPECIALISTS, L.P. | ) | |
| | ) | |
| | ) | No. _2_:17-cv-_03785_ |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| PAMELA LAZOS and | ) | **COMPLAINT** |
| STEPHANIE ANDREESCU, and | ) | |
| UNKNOWN NAMED OFFICIALS, personally | ) | |
| and in their official capacities as | ) | |
| agents of the U.S. Environmental Protection, | ) | |
| Agency, | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiffs, Ronald R. Foster and Marketing & Planning Specialists, L.P. ("Plaintiffs") by undersigned counsel, herein states his Complaint and Cause of Action against the EPA; Pamela Lazos ("Lazos"), in her official capacity as counsel to EPA; and Stephanie Andreescu ("Andreescu") in her official capacity as an enforcement investigator for EPA; and Unknown Named Officials of EPA ("Unknown Named EPA Officials"), individually and in their official capacities.

### INTRODUCTION

1.  Plaintiffs have been subject to malicious ongoing EPA enforcement coercion by Defendants since January of 2012.

2.  Plaintiffs have been subject to a malicious Administrative Compliance Order issued on January 24, 2012 issued against business entities in which he has a closely held interest.

3.  The Defendants, under the color of a regulatory scheme – more fully outlined below – violated Plaintiffs' 1st and 4th Amendment Constitutional rights to force Plaintiffs to incur:

a. Costs incurred in property maintenance and permitting incurred due to malicious regulatory action;

b. Costs incurred in appealing and defending the malicious regulatory enforcement action;

c. Damages to reputation;

d. Emotional distress, humiliation and physical toll therefrom;

e. Violation of the security of his private property from unreasonable search and malicious trespass;

f. Chilling of 1st Amendment rights to freedom of speech and association; and

g. Violation of his procedural rights under the APA.

4. The Defendants' violations of Plaintiffs' Constitutional rights has had a dramatic impact on Plaintiff, causing them to curtail their lawful political activities, expend considerable unnecessary funds, lose the physical security of his property, and devote countless hours of time to responding to onerous EPA information requests and EPA enforcement and litigation rooted in illegitimate motives against the Plaintiffs.

5. This lawsuit seeks damages, declaratory, and injunctive relief sufficient to finally halt EPA's targeting of the Plaintiffs, compensate Plaintiffs for the damages caused by the intentional unlawful actions of named defendants, and remedy unconstitutional agency action that harmed Plaintiffs by Defendants' unlawful acts.

## JURISDICTION AND VENUE

6. This is a civil action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201. Defendants Lazos and Andreescu have personally visited the property subject to the underlying EPA enforcement action in at least 2010, 2011 and 2015 for Andreescu and at least 2011 for Lazos.

7. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, 706. This Court has the authority to compel agency action that has·been unlawfully under 5 U.S.C. § 706. Monetary

damages are available pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

8.     The United States has waived its sovereign immunity in this action pursuant to 5 U.S.C. § 702.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) since Defendants performed their official duties in the Southern District of West Virginia, and the property giving rise to the malicious acts and  omissions giving rise to Plaintiffs' claims occurred in the Southern District of West Virginia.

## PARTIES
## THE PLAINTIFF

10.     Plaintiff Ron Foster is a citizen of the United States and the State of West Virginia. Mr. Foster resides in Putnam County, West Virginia.

11.     Marketing & Planning Specialists Limited Partnership is a Nevada limited partnership authorized to do business in West Virginia.

12.     The property subject to the unconstitutional search are those certain parcels of real estate and improvements thereon and appurtenances thereto, commonly known as Neal Run Crossing, located on West Virginia Route 68, in Lubeck district, Wood County, West Virginia, recorded by deed, made on October 29, 2009, and recorded in Book 11447, at page 679.

13.     Both Putnam County and Wood County, West Virginia are in the Southern District of West Virginia.

### THE DEFENDANTS

13.     The United States of America, by and through its agents, is a proper defendant pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1346.

14.     Defendant Pamela Lazos is an in house attorney for EPA with the Office of Regional Counsel for EPA Region III.  Ms. Lazos visited the Plaintiff's property in furtherance of EPA enforcement in at least 2011.

15.     Defendant Stephanie Andreescu is wetland inspector for EPA Region II, but at all times relevant to this case was a wetland inspector for EPA Region III. Ms. Andreescu visited the Plaintiff's property in furtherance of EPA enforcement in at least 2010, 2011 and 2015.

16.     Defendants Unknown Named EPA Officials are on information and belief complicit in the unconstitutional action of EPA Defendant Lazos.

17.     EPA Region III enforcement covers the Southern District of West Virginia.


## FACTUAL ALLEGATIONS

18.   Plaintiff Marketing & Planning Specialists Limited Partnership, owns a parcel of property which is the subject of EPA's alleged Clean Water Act ("CWA") violation.

    a. The Property is composed of two tracts located in Wood County, West Virginia and has been customarily referred to in this litigation as Neal Run Crossing.

    b. Prior to Marketing & Planning Specialists Limited Partnership and Foster Farms, LLC's ownership of the Property, it was owned by Endurance Group, LLC ("Endurance").

    c. In or about 2007-08, Endurance allegedly engaged in unauthorized dredging and filling on a portion of its property that is not at issue in this action.

    d. Endurance's creditors filed an involuntary bankruptcy petition against Endurance, Case No. 4:09-40053, in the United States Bankruptcy Court for the Southern district of West Virginia. EPA brought enforcement action against Endurance in 2009.

    e. EPA was aware of Endurance's bankruptcy case. Several months before the agency formally intervened in the bankruptcy and before Plaintiffs were even known to EPA, EPA's Pam Lazos stated that, in light of the Endurance bankruptcy, nothing could likely be done unless the EPA could "twist the arm" of the new purchaser to help finance the remediation of the already existing issues on the Neal Run Crossing.


19.     On September 9, 2010, EPA's Andreescu (nee Chin) entered onto the Plaintiff's Wood county property for the purposes of coercive regulatory investigation and enforcement pursuant to the Clean Water Act ("CWA").

20.     In deposition of Andreescu obtained only on August 19-20, 2015, Plaintiffs confirmed that Andreescu obtained illicit entry onto the Plaintiff's Wood county property by relying on the representations of a trespasser (thus herself becoming a trespasser). In this same deposition

Andreescu made materially false statements contrary to those given by the trespasser concerning the nature of the property in question and also made materially false statements contradicted by the very photographic evidence that she took during the September 9, 2010 trespass.

21.    Defendant Andreescu's nonconsensual, unlawful and trespassory entry upon Plaintiff's property was in violation of EPA's own guidance policy for entry onto private property in CWA inspection that has been in place since at least 1979 and confirmed by updated EPA policy since at least 2004. *See* EPA Memorandum "Conduct of Inspections After the Barlow's Decision" (April 11, 1979) and EPA "NPDES Compliance Inspection Manual" (July 2004).

22.    On January 24, 2012, Defendants issued a compliance order to a business in which Plaintiff is a beneficiary/member, claiming that the property was subject to the CWA, and alleging that Plaintiff's business had illegally filled an unnamed tributary on the property. Only by deposition testimony of Andreescu obtained on August 19-20, 2015 did Plaintiffs confirm that the compliance order was based upon information gathered by Andreescu through her nonconsensual, unlawful and trespassory entry upon Plaintiff's property as well as her materially false statements contradicted by the trespasser she relied upon for entry and contradicted by her own photographs taken on the trespass date.

23.    The order also required Plaintiff to submit a detailed restoration plan within forty-five (45) days of the effective date of the order (effective the day Plaintiff received the order).

24.    Defendants further stated that any violation of the order could result in criminal sanctions (imprisonment) and fines of up to $50,000 per day.

25.    Beginning at least by February 15, 2012 and extending into at least February of 2013, Defendants Lazos and Andreescu conducted internal email discussions amongst themselves concerning the legitimacy of Plaintiff's corporate entities, Lazos calling one of the entities " a fly-by-night[.]"

26.    Within this same 2012 - 2013 time frame, EPA representatives also communicated with representatives of West Virginia's Senator Manchin's office concerning the extent to which EPA could try to force pre-bankruptcy purchase issues to be rectified through enforcement activities against the Plaintiffs.

27.    Upon information and belief gathered during discovery in this regulatory enforcement appeal and defense case, at some time during 2012, someone at EPA conducted unprecedented political research on Plaintiffs Ron Foster and Marketing and Planning Specialists, LP. The document USEPA 002570-002573 shows a list of 2009 to 2010 political campaign contributions and contributors in Putnam County, West Virginia. On the second page of the document, Plaintiffs Ron Foster and Marketing and Planning Specialists, LP, are circled and underlined, respectively,

for their March 3, 2010 $250.00 contribution to "McKinley for Congress" a campaign for Republican David McKinley's bid for U.S. Congress.

28.     Only upon sworn testimony in deposition of Pamela Lazos taken on August 20, 2015, did Plaintiffs discover that Plaintiff Lazos admitted to recollecting that she had seen the document prior to discovery. Lazos stated that she could not recollect where or how she obtained the document, but stated that she did believe it had been in her files.

29.     Jeffrey Lapp, EPA Region III's Associate Director for the Office of Environmental Programs, deposed that he had "never seen a document like this before." Moreover, Mr. Lapp testified that he could see no reason why anyone's political contributions would be relevant to an EPA enforcement matter, and that if anyone suggested the conducting of such political research he "would vehemently reject that proposal."

30.     EPA's Lazos' preparation of responses to Congressional inquiries from Congressman McKinley's inquiry to the agency on behalf of Plaintiff Ron Foster fall within time frames for which it is reasonable to believe that the political research on Ron Foster and Marketing & Planning Specialists, LP was conducted.

31.     Lazos admitted in her August 20, 2015 deposition to inexplicably redacting certain USACE email content  that made clear that the U.S. Army Corps of Engineers ("USACE") opposed a suggested mitigation plan not due to the "the extent of violations" as represented by EPA Regional Administrator Shawn Garvin in an August 13, 2012 letter to Congressman McKinley. Rather, the unredacted emails show that USACE simply did not want to verify a jurisdictional delineation if EPA was unwilling to consider work by Foster Plaintiffs on Endurance legacy areas as a valid mitigation offset for the Foster Plaintiffs' alleged unauthorized work.

32.     Lazos also admitted in her August 20, 2015 deposition that she likely drafted the Garvin letter to McKinley. The language in the letter is misrepresented to Congressman McKinley the basis for USACE's reluctance to pursue the required jurisdictional delineation (i.e. EPA's opposition to mitigation credit, as opposed to the alleged "extent of violations").

33.     Between 2012 and 2014, the time frame where the political research had to have taken place, EPA conducted civil penalty calculations against the Plaintiff's business entity(ies), in May of 2014 EPA, via counsel at the Department of Justice, wrote Plaintiff that the government expected him to pay a penalty of $414,800.00.

34.     Throughout 2012 to 2013 Plaintiff requested an appeal to challenge the January 24, 2012 compliance order and received no guidance from the agency on how to pursue such an appeal.

35.    During her August 19, 2015 deposition, EPA's Andreescu stated that she believed Democratic politicians were more supportive of EPA's mission.

36.    Between January of 2012 to the date of this filing, Plaintiffs have faced an ongoing regulatory enforcement confrontation with EPA, resulting in a lawsuit filed in the Southern District of West Virginia.  Legal fees to date exceed a half a million dollars.

## COUNT I
(Violations of the First Amendment – Freedom of Speech – Bivens Action)

By Plaintiffs Against Defendants Lazos and the Unknown Named EPA Officials In Their Individual Capacities While Acting Under Color of Federal Authority

36.    The allegations of Paragraphs 19 through 36 above are incorporated by reference herein as if fully set out.

37.    The First Amendment protects private speech from government interference or restriction when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

38.    Plaintiffs' speech enjoys First Amendment protection.

39.    The Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

40.    Defendants Lazos and the Unknown Named EPA Officials unlawfully deprived Plaintiffs of their First Amendment rights in connection with and arising from their unlawful research into the political contributions of the Plaintiffs, and the utilization of that political intelligence as a factor in EPA's enforcement activities, Congressional communications, and civil penalty calculations  as described herein, damaging Plaintiffs on the basis of Plaintiffs' viewpoints, and failing to prevent such conduct by other EPA employees under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

41.    In targeting Plaintiffs' political speech, Defendants Lazos and the Unknown Named EPA Officials engaged in impermissible viewpoint-based discrimination in violation of established First Amendment principles, while acting under color of federal authority in their respective official EPA positions.

42.    Defendants' conduct directly infringed upon Plaintiffs' speech by inhibiting his ability to engage in effective advocacy and other expressive activities.

43.     Defendants' conduct constitutes retaliation against Plaintiffs on the basis of the actual or perceived viewpoint of his protected speech.

44.     Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

45.     Plaintiffs have no other adequate monetary remedy in court for Defendants' violations of his constitutional rights as complained of herein.

## COUNT II
(Violations of the First Amendment – Freedom of Association – Bivens Action)

By Plaintiffs Against Defendants Lazos and the Unknown Named EPA Officials In Their Individual Capacities While Acting Under Color of Federal Authority

46.     The allegations of Paragraphs 19 through 36 above are incorporated by reference herein as if fully set out.

47.     The First Amendment to the United States Constitution protects Plaintiffs' right to freely associate with others of their choosing for the purposes of engaging in protected speech or religious activities.

48.     The Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

49.     Defendants Lazos and the Unknown Named EPA Officials unlawfully deprived Plaintiffs of their First Amendment rights in connection with and arising from their unlawful research into the political contributions of the Plaintiffs, and the utilization of that political intelligence as a factor in EPA's enforcement activities, Congressional communications, and civil penalty calculations  as described herein, damaging Plaintiffs on the basis of Plaintiff's viewpoints, and failing to prevent such conduct by other EPA employees under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

50.     Defendants Lazos and the Unknown Named EPA Officials, while acting under color of federal authority in their respective official EPA positions, infringed upon Plaintiffs' ability to freely associate for protected speech purposes with others of their choosing, including potential or actual Congressional representatives.

51.     Defendants knew, or reasonably should have known, that targeting Plaintiffs' political contributions for additional and illegitimate scrutiny would violate Plaintiff's federal constitutional rights.

52.     Plaintiffs have no other adequate monetary remedy in court for Defendants' violations of his constitutional rights as complained of herein.

## COUNT III
(Violations of the Fourth Amendment – Unreasonable Search and Illegal Trespass – Bivens Action)

By Plaintiffs Against Defendants Andreescu In Her Individual Capacity While Acting Under Color of Federal Authority.

53.     The allegations of Paragraphs 19 through 36 above are incorporated by reference herein as if fully set out.

54.     The Fourth Amendment to the United States Constitution protects persons against the unreasonable search of private property.

55.     The Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

56.     Defendant Andreescu unlawfully deprived Plaintiffs of their Fourth Amendment rights in connection with and arising from her unlawful trespassory search of Plaintiff's property without a warrant and without permission of the Plaintiffs while she knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

57.     The fruit of Defendant Andreescu's unlawful search was a material factor in EPA's enforcement activities, Congressional communications, and civil penalty calculations as described herein, damaging Plaintiffs. EPA's compliance order was based upon information gathered by Andreescu through her nonconsensual, unlawful and trespassory entry upon Plaintiff's property as well as her materially false statements contradicted by the trespasser she relied upon for entry and contradicted by her own photographs taken on the trespass date.

58.     Plaintiffs have no other adequate monetary remedy in a court for Defendants' violations of their constitutional rights as complained of herein.

## COUNT IV

(Unlawful Agency Action in Violation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706 Against Agency Defendants in their official capacities)

By Plaintiffs Against Defendants Lazos and the Unknown Named EPA Officials In Their Individual Capacities While Acting Under Color of Federal Authority

59.     The allegations of Paragraphs 1 through 41 above are incorporated by reference herein as if fully set out.

60.     Defendants' implementation of ongoing regulatory coercive enforcement action by and through the violation of Plaintiff's 1st and 4th Amendment Constitutional rights from the acts of Lazos and Andreescu in the scope of their duties is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

## DAMAGES

1.     Plaintiffs have suffered the following injuries for which he seeks full compensation under the law:

   a.     Costs incurred in property maintenance and permitting incurred due to malicious regulatory action

   b.     Costs incurred in defending the malicious regulatory enforcement action;

   c.     Damages to reputation;

   d.     Emotional distress, humiliation and physical toll therefrom;

   e.     Violation of the security of his private property from unreasonable search and malicious trespass;

   f.     Chilling of 1st Amendment rights to freedom of speech and association; and

   g.     Violation of procedural due process rights under the APA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs demand judgment against Defendants and in favor of Plaintiffs as follows:

1.      Declaratory relief:

      A.      Under Count I, that this Court declare that the conduct of Defendants Lazos and the Unknown Named EPA Officials, while acting under color of federal authority, violated the constitutional rights of Plaintiffs and award Plaintiffs compensatory and punitive damages in an amount to be proved at trial against Defendants Lazos, Andreescu and the Unknown Named EPA Officials, for their violations of Plaintiffs' constitutional rights committed while acting under color of federal authority;

      B.      Under Count II, that this Court declare that the conduct of Defendants Lazos and the Unknown Named EPA Officials,, while acting under color of federal authority, violated the constitutional rights of Plaintiffs and award Plaintiffs compensatory and punitive damages in an amount to be proved at trial against Defendants Lazos, Andreescu and the Unknown Named EPA Officials, for their violations of Plaintiffs' constitutional rights committed while acting under color of federal authority;

      C.      Under Count III, that this Court declare that the conduct of Defendant Andreescu, while acting under color of federal authority, violated the constitutional rights of Plaintiffs and award Plaintiffs compensatory and punitive damages in an amount to be proved at trial against Defendants Lazos, Andreescu and the Unknown Named EPA Officials, for their violations of Plaintiffs' constitutional rights committed while acting under color of federal authority;

      D.      Under Count IV, that this Court declare that the conduct of Defendant Andreescu, while acting under color of federal authority, arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity, and should be set aside as unlawful pursuant to 5 U.S.C. § 706; and award Plaintiffs compensatory and punitive damages in an amount to be proved at trial against Defendants Lazos, Andreescu and the Unknown Named EPA Officials, for their violations of Plaintiffs' constitutional rights committed while acting under color of federal authority.

2.      Enjoining Defendants and their agents, employees, successors, and all others acting in concert with them, from subjecting Plaintiffs to the unconstitutional and unlawful practices described in this complaint;

3.      Damages in actual costs of property maintenance and permitting incurred due to malicious regulatory action; plus

4.      Damages to Ronald R. Foster's reputation in the amount of $1,000,000.00; plus

5.      Damages of Emotional distress, humiliation and physical toll therefrom suffered by Ronald R. Foster in the amount of $1,000,000.00; plus

6.      Damages in the chilling of 1st Amendment rights to freedom of speech and association suffered by Plaintiffs in the amount of $1,000,000.00; all in the total amount of not less than $3,000,000.00 plus actual costs and fees in an amount to be determined at trial.

7.      Plaintiffs further are entitled and do hereby seek recovery of all costs and attorneys' fees incurred by Plaintiffs in this civil action, and those in defending the prior malicious regulatory action and appeal and defense thereof, together with for such further and additional relief at law or in equity that this Court may deem appropriate or proper.

8.      Punitive damages in an amount to be determined at trial.

9.      Awarding Plaintiffs' counsel reasonable attorneys' fees and litigation costs, including but not limited to fees, costs, and disbursements pursuant to 28 U.S.C. § 2412; and

10.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues so triable.

DATED this 9th day of August, 2017.

Respectfully submitted,

RON FOSTER, MARKETING & PLANNING SPECIALISTS LIMITED PARTNERSHIP and FOSTER FARMS, LLC

James S. Crockett, Jr.  (WV State Bar No.  9229)
J.  C.  (Max) Wilkinson, Jr.  (WVSB No. 8869)
300 Kanawha Boulevard, E.  (Zip 25301)
P.  O.  Box 273
Charleston, WV  25321-0273
jwilkinson@spilmanlaw.com
Telephone: (304) 340-3800
Facsimile: (304) 340-3801